UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOLLY D. KLEIN,

        Plaintiff,

v.                                                              Case No.  8:20-cv-876-T-24 SPF

NAVIENT SOLUTIONS, LLC, ET AL.,

        Defendants.

_____/

## ORDER

This cause comes before the Court on two motions: (1) Defendant Navient's Motion to Dismiss (Doc. No. 21), which Plaintiff opposes (Doc. No. 24); and (2) Trans Union and Equifax's Motion to Dismiss (Doc. No. 22), which is joined by Experian (Doc. No. 23), and which Plaintiff opposes (Doc. No. 25).  As explained below, the motions are granted in part and denied in part.

## I.  Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Background

Plaintiff Holly Klein has a loan with Defendant Navient Solutions, LLC ("Navient"). On July 10, 2019, Plaintiff and Navient discussed settlement of Plaintiff's loan, which at the time had totaled over $148,000.

Navient sent Plaintiff a settlement offer, in which it offered to settle the loan for $37,000.[1] (Doc. No. 19-1). Specifically, Navient stated that under its offer, Plaintiff must make the following payments: (1) $5,000 on July 22, 2019; (2) $266.66 per month from August 22, 2019 through June 22, 2029; and (3) $267.46 on July 22, 2029. Navient also delineated what Plaintiff was required to do in order to accept its offer:

> To accept this offer, you must ensure we receive all the required payments by the corresponding due dates listed above. Once we receive all the required payments and the funds clear, we will consider the loans to be settled in full. We'll then stop all further collection activities regarding the loans and report the status as "paid in full for less than the full balance" on your credit report.

---

[1] Plaintiff attaches the settlement offer to her amended complaint. (Doc. No. 19-1). Some of Plaintiff's allegations within her complaint contain legal conclusions that contradict the terms of the attached settlement offer. (Doc. No. 19, ¶ 33-39). The Court may consider the attached settlement offer, and the terms within that document control over Plaintiff's conflicting allegations. See Leones v. Rushmore Loan Management Services, LLC, 749 Fed. Appx. 897, 902 (11th Cir. 2018).

(Doc. No. 19-1).  Additionally, Navient set forth the consequences if Plaintiff failed to accept its

offer by failing to make all of the required payments:

> If we do not receive all the required payments on or before the due
> dates listed above, any payments received while the offer was open
> will be applied toward the outstanding balance of the loans, but we
> won't consider the loans to be settled. You and any cosigners would
> remain responsible for repayment of the entire unpaid balance of the
> loans pursuant to the original loan agreement(s).

(Doc. No. 19-1).  As of the filing of her amended complaint in May of 2020, Plaintiff had made

all of the required payments set forth in Navient's settlement offer that had become due.

On October 20, 2019, Plaintiff obtained copies of her credit reports from Defendants

Equifax, Experian, and Trans Union (collectively referred to as "credit reporting agencies" or

"CRAs").  According to Plaintiff, the credit reports contained inaccurate, incomplete, and

materially misleading information regarding her Navient loan.  Specifically, Plaintiff contends

that the reports contained the following information: (1) the total balance for the Navient loan

was listed as being over $140,000, rather than $37,000 less her payments made pursuant to

Navient's offer; (2) the credit reports did not reflect her monthly payments as being $266.66; (3)

the credit reports indicated past due amounts due under the Navient loan, rather than showing no

past due amounts due to her continued, timely payments in accordance with the settlement offer;

(4) the credit reports reflected incorrect high balance amounts for the loan that did not

correspond to the settlement offer or her original loan; and (5)  the credit reports failed to include

the status remark of "Paying Under a Partial Payment Agreement."

In response, on November 27, 2019, Plaintiff sent a detailed letter to Navient and the

CRAs disputing the allegedly inaccurate, incomplete, and materially misleading information

regarding her Navient loan.  Despite her dispute, her credit reports still contained the allegedly

inaccurate, incomplete, and materially misleading information.

On January 7, 2020, Plaintiff sent another detailed letter to Navient and the CRAs disputing the information, and she included a copy of Navient's settlement offer.  Experian refused to investigate the matter further; Equifax and Trans Union failed to correct the information as requested.  Trans Union's credit report listed the Navient loan information as being "VERIFIED AS ACCURATE."

As a result of the above, Plaintiff filed suit against Navient and the CRAs for violating the Fair Credit Reporting Act ("FCRA").  Plaintiff asserts a claim against Navient for violating 15 U.S.C. §1681s-2(b) by failing to properly investigate Plaintiff's dispute and then correctly report the loan information in accordance with the settlement offer.  Additionally, Plaintiff asserts claims against the CRAs for violating 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information in Plaintiff's credit reports.  She also asserts claims against the CRAs for violating 15 U.S.C. §1681i by failing to conduct reasonable reinvestigations into Plaintiff's 2019 and 2020 disputes.  In response, Defendants filed the instant motions to dismiss.

### III.  Navient's Motion to Dismiss

Navient moves to dismiss Plaintiff's claim under §1681s-2(b) for failing to properly investigate her dispute and then correctly report the loan information in accordance with the settlement offer.  In order to succeed on a claim for violating §1681s-2(b), one of the elements that must be met is that the information in the credit report was inaccurate or incomplete.  See Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313 (11th Cir. 2018)(stating that in order to show that the furnisher failed to conduct a reasonable investigation, the plaintiff must identify some facts that the furnisher could have uncovered that would have showed that the reported information was inaccurate or incomplete).

Navient argues that Plaintiff's claim is based on a faulty premise—she misconstrues Navient's settlement *offer* as being an *agreement* to immediately reduce her loan balance and change the terms of her loan.  Instead, Navient argues that it made an offer to Plaintiff to deem the loan as paid in full *after* Plaintiff timely makes all of the required payments, totaling $37,000.  The Court agrees with Navient's argument.

In order for Plaintiff to accept Navient's offer, she had to do so in the manner set forth in the offer.  Thus, until Plaintiff timely makes all of the payments set forth in the offer, totaling $37,000, Plaintiff has not accepted Navient's offer and the original loan amount remained due under the original terms.  Without acceptance of the offer in the manner set forth by Navient, a binding agreement was not formed, and Plaintiff could only accept Navient's offer by timely making all of the payments.  Plaintiff's intention to fully comply with the offer, combined with her making all of the required payments set forth in the offer that *have currently become due*, does not create a binding agreement to immediately reduce the loan balance or to change the terms of the loan.

Because there was no agreement to change any of the terms of the loan, the information in the credit reports reflecting the status of the Navient loan based on its original terms was not inaccurate or incomplete.  The Eleventh Circuit's decision in Felts is instructive on this issue.

In Felts, the plaintiff lost her job and enrolled in Wells Fargo's unemployment forbearance program for her home mortgage.  See Felts, 893 F.3d at 1309.  Under the program, the plaintiff was required to make monthly plan payments of $25 from September 2012 through February 2013 (instead of her regular monthly loan payment of $2,197.38).  See id. at 1310, 1313.  Additionally, the program imposed two other conditions: (1) Wells Fargo would report to the credit reporting agencies that the plaintiff was paying her mortgage under a partial payment

agreement; and (2) the plaintiff's regular mortgage payments would accrue during the forbearance period and the total accrued amount would become due after the forbearance period. See id. at 1310.  The plaintiff completed the program, later sold the home, and paid the remaining loan balance by June 1, 2013.  See id.

In June 2013, the plaintiff attempted to purchase a new home and her loan officer obtained her credit report.  See id.  The credit report revealed that Wells Fargo had reported the loan as being past due during the forbearance period and that her monthly payment due each month during that time was $2,197.38.  See id. at 1310, 1313.  The plaintiff disputed the accuracy of the credit report and later filed suit against Wells Fargo for failing to conduct a reasonable investigation, as required by § 1681s-2(b).  See id. at 1310-11.  The district court granted Wells Fargo summary judgment, finding that there was no evidence of any factual inaccuracy or materially misleading information.  See id. at 1311.  The plaintiff appealed, and the appellate court affirmed.  See id.

On appeal, the plaintiff, Felts, argued that Wells Fargo reported inaccurate information by reporting that: (1) her monthly payment due during the forbearance period was $2,197.38 (rather than $25); and (2) her payments during that period were past due (because she was paying the amount required under the forbearance program).  See id. at 1314.  The appellate court rejected her argument, stating:

> Felts' argument misconstrues Wells Fargo's reporting obligation. Wells Fargo was not required to furnish information to the CRAs regarding every agreement it formed with Felts. Instead, Wells Fargo was required to furnish information to the CRAs regarding Felts' payment status and history for one agreement in particular: the Note Felts signed for the Loan. The CRAs requested, and Wells Fargo submitted, information regarding Felts' compliance with her obligation to make installment payments in accordance with the Note she signed. Felts' apparent compliance with the terms of a second, separate agreement she entered into with Wells Fargo—the

6

> Plan [*i.e.,* the forbearance program]—has no bearing on the accuracy of the information Wells Fargo reported to the CRAs regarding Felts' compliance with the terms of her first, original agreement—the Note—unless the Plan legally modified the terms of the Note. As Felts has not identified any fact in the record establishing that the Plan legally modified the Note, the information Wells Fargo reported regarding Felts' compliance with the terms of the Note was not inaccurate: Wells Fargo reported that (1) the Scheduled Monthly Payment Amount for the Note was $2,197.38, which Felts agrees that it was; and (2) Felts did not pay the amount the Note required her to pay beginning in July 2012, which Felts concedes she did not do.

Id.

Likewise, in the instant case, Navient reported accurate information to the CRAs by reporting: (1) the total balance and decreasing balance of the Navient loan without regard to the settlement offer; and (2) past due amounts under the loan without regard to the settlement offer. As such, Plaintiff cannot assert a claim against Navient with regard to its investigation of this information, because such information was correct and not misleading.  Accordingly, the Court grants Navient's motion to dismiss to the extent that Plaintiff's claim is based on Navient's investigation into these alleged inaccuracies.

However, Plaintiff's claim is also based on the following alleged inaccuracies: (1) the amount due each month on the loan (as it was reported to be $0 or with the code "ND"); (2) the high balance amounts for the loan; and (3) Navient's failure to report her September 2019 payment to Equifax.  Navient has not addressed these allegations, and therefore, its motion to dismiss is denied to the extent that Plaintiff's claim is based on Navient's investigation into these alleged inaccuracies.

Additionally, Plaintiff's claim against Navient is also based on her contention that the reported information is materially misleading, because Navient should have used the status

remark of "Paying Under a Partial Payment Agreement" with respect to the loan.[2]  The parties

have not fully addressed the issue of the use of special codes to ensure that the credit information

is not misleading.

The Court's research has revealed that the Consumer Data Industry Association publishes

a Credit Reporting Resources Guide ("CRRG") that provides codes to be used to provide more

detail regarding credit information.  For example, the CRRG provides that the code "AC" is used

to indicate that the person is paying under a partial payment agreement.  Plaintiff contends that

Navient should have used that code with respect to her loan, and without such qualifying

information, the reported credit information regarding this loan is misleading.  Without more

briefing by the parties, the Court is persuaded by Plaintiff's argument that a jury could find that

the reported information was misleading without the use of the special code or other indication

that Plaintiff was making her loan payments under a payment plan.  See Pittman v. Experian

Information Solutions, Inc., 901 F.3d 619, 639 (6th Cir. 2018)(stating that reporting that the

plaintiff "was delinquent on his loan payments without reporting [that he was paying under a

payment plan] implies a much greater degree of financial irresponsibility than was present" and

that "the existence of and [the plaintiff's] compliance with the terms of the [payment plan] is

relevant information about the status of his mortgage loan"); Felts, 893 F.3d at 1318-19 (stating

that "it was not misleading for Wells Fargo's to report that [the plaintiff] was not making

payments under the Note as agreed, particularly in light of Wells Fargo's additional statement

that [the plaintiff] was paying under a partial payment agreement").  Accordingly, the Court

---

[2] Additionally, Plaintiff argues that the loan information was misleading, because Navient failed
to use a "disputed" status code when responding to Equifax regarding Plaintiff's 2019 dispute.
However, that allegation is not contained in her amended complaint.  Instead, she only alleges
that *Equifax* failed to report the loan information as disputed.  (Doc. No. 19, ¶ 46(a)(v)).

denies Navient's motion to the extent that Plaintiff's claim is based on Navient's investigation into the failure to include the status remark of "Paying Under a Partial Payment Agreement" with respect to the loan.

## IV. The Credit Reporting Agencies' Motion to Dismiss

Plaintiff asserts claims against the CRAs for violating 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information in Plaintiff's credit reports. She also asserts claims against the CRAs for violating 15 U.S.C. §1681i by failing to conduct reasonable reinvestigations into Plaintiff's 2019 and 2020 disputes. The CRAs jointly move to dismiss these claims, making essentially the same argument as Navient—that the disputed information was accurate and cannot support her claims.

In order to assert a claim under both §1681e(b) and §1681i, Plaintiff must allege that the credit reports contained inaccurate information. See Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156, 1160 (11th Cir. 1991); Ray v. Equifax Information Services, LLC, 327 Fed. Appx. 819, 826 (11th Cir. 2009). For the same reasons as set forth above with respect to Navient's motion, the Court agrees that the CRAs reported accurate information regarding: (1) the total balance and decreasing balance of the Navient loan without regard to the settlement offer; and (2) past due amounts under the loan without regard to the settlement offer. As such, Plaintiff cannot assert a claim against the CRAs with regard to the reporting of, and reinvestigation into, this information, because such information was correct and not misleading. Accordingly, the Court grants the CRAs' motion to dismiss to the extent that Plaintiff's claims are based on the CRAs' reporting of, and reinvestigation into, these alleged inaccuracies.

However, Plaintiff's claims are also based on the following alleged inaccuracies: (1) the amount due each month on the loan (as it was reported to be $0 or with the code "ND"); (2) the

high balance amounts for the loan; and (3) Equifax's failure to report her September 2019 payment on the Navient loan.  The CRAs have not addressed these allegations, and therefore, their motion to dismiss is denied to the extent that Plaintiff's claims are based on the CRAs' reporting of, and reinvestigation into, these alleged inaccuracies.

Plaintiff's claim against Equifax is also based on Equifax's failure to report Navient's loan information as disputed.  Equifax fails to address this argument, and the Court is persuaded that this claim should remain.  Section 1681i(c) provides the following:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

15 U.S.C. §1681i(c).  Accordingly, the Court denies Equifax's motion to the extent that Plaintiff's claim against it is based on its failure to report Navient's loan information as disputed and to properly reinvestigate the issue.

Additionally, Plaintiff's claims against the CRAs are also based on her contention that the reported information is materially misleading, because the CRAs should have used the status remark of "Paying Under a Partial Payment Agreement" with respect to the loan.  The parties have not fully addressed the issue of the use of special codes to ensure that the credit information is not misleading, and for the same reasons as set forth above with respect to Navient's motion, the Court is persuaded by Plaintiff's argument that a jury could find that the reported information was misleading without the use of the special code or other indication that Plaintiff was making her loan payments under a payment plan.  See Pittman, 901 F.3d at 639; Felts, 893 F.3d at 1318-19.  Accordingly, the Court denies the CRAs' motion to the extent that Plaintiff's claims are

based on their failure to include the status remark of "Paying Under a Partial Payment

Agreement" with respect to the loan and their failure to properly reinvestigate the issue.[3]

## V.  Conclusion

Based on the above, it is ORDERED AND ADJUDGED that:

(1)     Defendant Navient's Motion to Dismiss (Doc. No. 21) is **GRANTED IN PART**

**AND DENIED IN PART:** The motion is **GRANTED** to the extent that the Court dismisses

Plaintiff's claim against Navient to the extent that it is based on Navient's investigation into the

reporting of the total balance, the decreasing balance, and the past due amounts of the loan;

otherwise, the motion is **DENIED**.

(2)     The CRA's Motion to Dismiss (Doc. No. 22, 23) is **GRANTED IN PART AND**

**DENIED IN PART:** The motion is **GRANTED** to the extent that the Court dismisses Plaintiff's

---

[3] The parties have also failed to address whether the CRAs could be found to have *willfully* violated the FCRA (as opposed to negligently) if the information they reported was technically accurate, yet still misleading.  The case law suggests that the Eleventh Circuit has not yet decided whether a CRA reporting technically accurate but misleading information violates the FCRA, and given that some courts have found that such is not a violation, reporting technically accurate but misleading information has not been found to form the basis for a claim that a CRA committed a *willful* violation.  See Cahlin, 936 F.2d at 1157 (noting two different judicial interpretations); Ray, 327 Fed. Appx. at 826 n.3 (noting that the Eleventh Circuit has not chosen between the "technically accurate" and "factually accurate but misleading or incomplete" interpretations of accurate credit reporting); Pedro v. Equifax, Inc., 868 F.3d 1275, 1281-83 (11th Cir. 2017)(finding that the CRA did not willfully violate §1681e(b), because it was not objectively unreasonable for the CRA to read the FCRA as only requiring technical accuracy); Williams v. Capital One Bank (USA) N.A., 785 Fed. Appx. 741, 747 (11th Cir. 2019)(noting that the Eleventh Circuit has not yet determined which interpretation of accuracy applies to § 1681e(b) claims); Dodgson v. First Advantage Background Services Corp., 2019 WL 2306131, at *3 (N.D. Ga. Mar. 7, 2019)(stating that "[w]here a credit reporting agency operates under an objectively reasonable interpretation of the FCRA, any violation committed under that interpretation is not willful or reckless").  The Eleventh Circuit has implied that the correct reading of the FCRA is that the information should be both factually accurate and not misleading.  See Pedro, 868 F.3d at 1281 (stating that the better reading of the FCRA "requires that credit reports be both accurate and not misleading").  However, the Court will not rule on the issue until it is briefed by the parties.

claims against the CRAs to the extent that the claims are based on their reporting of, and reinvestigation into, the total balance, the decreasing balance, and the past due amounts of Navient's loan; otherwise, the motion is **DENIED**.

DONE AND ORDERED at Tampa, Florida, this 22nd day of June, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record